UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHARLENE A. o/b/o D.A.C.,[1]

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**

1:20-cv-00268 (JJM)

---

This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of the Commissioner of Social Security that D.A.C., a minor, was not entitled to Supplemental Security income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [14, 17].[2] The parties have consented to my jurisdiction [19]. Having reviewed their submissions [14, 17, 18], the plaintiff's motion is granted.

## BACKGROUND

The parties' familiarity with the 1,318-page administrative record [10, 11] is presumed. Further, the parties have comprehensively set forth in their papers the plaintiff's treatment history and the relevant medical evidence. Accordingly, I reference below only those facts necessary to explain my decision.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper right corner of the page).

Plaintiff filed for benefits on D.A.C.'s behalf in December 2012, when D.A.C. was 2 years old (D.A.C. was born in 2010), alleging a disability beginning on April 1, 2012, due to: speech problems, behavioral and eating disorder, sensory problems, and immunity problems. Administrative Record [10], pp. 136, 140.  On October 30, 2014, Administrative Law Judge ("ALJ") Timothy M. McGuan issued a decision finding that D.A.C. had not been disabled as defined in the Social Security Act since the date of his application. Administrative Record [11], p. 675.  On July 10, 2018, this court remanded this matter for the ALJ to consider D.A.C.'s limitations in three areas of functional domains relevant to assessing disability in children: interacting and relating with others; moving about and manipulating objects; and caring for oneself.  Decision and Order [11], pp. 645-46.  On October 2, 2018, the Appeals Council remanded this case to ALJ McGuan for further proceedings.  Administrative Record [11], p. 656. Thereafter, plaintiff filed a "Claimant's Recent Medical Treatment" form with the SSA that identified D.A.C.'s examining physicians and listed his diagnoses as "autism, ADHD, ADD, chronic sleep apnea, chronic asthma, a[b]normal [cyst] . . . sensory processing disorder, foot disorder, [and] reoccurring ear infection".  Id., p. 778.

An administrative hearing was held on August 27, 2019 before ALJ McGuan.  Id., pp. 577-592 (transcript of hearing).  At that time, D.A.C. was 9 years old.  Plaintiff, who was represented by an attorney, testified.  Id., pp. 581-91.  At the hearing, plaintiff's attorney alerted the ALJ that some records had not yet been received, including those from The Robert Warner, M.D. Center, which the attorney believed were "kind of mixed in with Oishei".  Id., p. 580-81. Although a number of additional records from the John R. Oishei Children's Hospital appear in the record, none appear to contain additional records from The Robert Warner, M.D. Center.  See Id., pp. 895-957, 1080-1141, 1146-1214.

On December 2, 2019, ALJ McGuan issued a decision finding that D.A.C. was not disabled since December 11, 2012, the date plaintiff filed the application on D.A.C.'s behalf. Id., pp. 557-67.  To reach that determination, ALJ McGuan found that plaintiff's severe impairments were "speech and language delay, mild motor delays, obstructive sleep apnea, otitis media, congenital pes planus (flat feet), [and] attention deficit and hyperactivity disorder (ADHD)".  Id., p. 5558.  Although ALJ McGuan considered autism at this stage of the analysis, he rejected it as a severe impairment based upon testing done in 2014, when D.A.C. was 3 years old:

> "In terms of the claimant's alleged autism, despite the contentions of the claimant's mother, the record shows that upon extensive testing at the Autism Spectrum Center in June 2014 by Michele Hartley-McAndrew, M.D. the claimant did not meet the criteria for autism spectrum (19F/4, 31F/8[3]).  Accordingly, I find that the claimant's alleged autism is not medically determinable."

Id., p. 558.  ALJ McGuan went on to find that none of D.A.C.'s severe impairments met, or were medically equivalent to the severity of, a listed impairment.  Id., p. 559.  Finally, he found that D.A.C.'s impairments did not functionally equal the severity of the listings.  Id., pp. 560-67. Thereafter, this action ensued.

## DISCUSSION

In seeking remand for further administrative proceedings, plaintiff argues, *inter alia*, that ALJ McGuan erred by relying on a stale medical opinion to reject autism as a severe impairment and ignoring more recent medical records diagnosing autism.  See Plaintiff's Memorandum of Law [14-1], pp. 15-20.  Plaintiff further argues that the functional medical and

---

[3]   These references to the record correspond to Administrative Record [11], pp. 396 and 510.

other opinions that ALJ relied upon to assess D.A.C.'s symptoms in the six functional domains were all stale:

> "All the medical opinions relied on by the ALJ were offered in 2013 – *six years before* the ALJ's decision in 2019. . . . To put this in perspective – Dr. San Jose Santos based her opinion on records from when D.A.C. was two years and seven months old. . . . At his remanded hearing – he was nine. . . . The diagnoses of autism, pervasive developmental disorder, and periventricular leukomalacia [4] all came well after these opinions were rendered – making these opinions decidedly stale. . . . It is not the 'mere passage of time' that renders an opinion stale, but rather 'significant developments' in an individual's medical history. . . . Clearly . . . having a firm diagnosis of autism, and *six years* of intervening treatment and educational supports for such a young child would constitute 'significant developments' to make these old medical opinions irrelevant."

Id., p. 19 (emphasis in original). Plaintiff argues that the staleness of the evidence ALJ McGuan relied upon created a gap in the record that he should have filled by developing a current medical opinion of the functional effects of D.A.C.'s combined impairments.

In response, the Commissioner argues that Dr. Hartley-McAndrew's June 2014 opinion that D.A.C. did not meet the diagnostic criteria for autism was substantial evidence to support the ALJ's determination that autism was not a severe impairment. *See* Commissioner's Brief [17-1], pp. 11-12. The Commissioner argues further that, even if rejecting autism as a severe impairment was an error, it was harmless because ALJ McGuan continued his analysis, finding that D.A.C.'s combined impairments in each of the six domains of functioning were not functionally equivalent to a listing. Id., pp. 12-19.

---

[4]    Periventricular leukomalacia ("PVL") "is a softening of white brain tissue near the ventricles" in the brain. . . . PVL occurs because brain tissue has been injured or has died. . . . This is a disorder that causes problems with muscle control. A child with PVL may also have thinking or learning problems. . . . PVL may lead to problems with physical or mental development". Cedars Sinai, Periventricular Leukomalacia (PVL) in Children, https://www.cedars-sinai.org/health-library/diseases-and-conditions---pediatrics/p/periventricular-leukomalacia-pvl-in-children.html (last visited September 27, 2021).

As explained more fully below, I agree with plaintiff that ALJ McGuan failed to properly consider D.A.C.'s diagnosis of autism at step 2, and that the evidence upon which ALJ McGuan relied concerning D.A.C.'s functional abilities was stale and, therefore, not substantial evidence to support his conclusions.

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

**B.     Infant Disability Standard**

A claimant under 18 years of age, such as D.A.C., is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §1382c(a)(3)(C). Under the applicable regulations, D.A.C. must show that he is not working, that he has a "severe" impairment or combination of impairments, and that the impairment or combination of impairments is of listing-level severity - *i.e.*, medically or functionally equal to the severity of a listed impairment. 20 C.F.R. §§416.924(a)-(d).

Functional equivalence of limitations in children is evaluated in six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-

being.  20 C.F.R. §416.926a(b)(1)(i)-(vi).  Marked limitations in two domains of functioning or an extreme limitation in one domain constitutes a functional equivalent to a listed impairment. Id. §416.926a(d).  "Marked" limitation for a domain is when a claimant's "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." Id. §416.926a(e)(2)(i).

C.     **ALJ McGuan's Analysis of D.A.C.'s Functional Limitations is Not Supported by Substantial Evidence**

        At step two of his analysis, ALJ McGuan considered only the June 2014 opinion of Dr. Hartley-McAndrew to determine that autism was not one of D.A.C.'s severe impairments. Administrative Record [10], p. 558.  However, there is evidence at later points in the medical record that D.A.C. was diagnosed with autism.  ALJ McGuan did not acknowledge that evidence in his step 2 analysis, nor did he explain why he rejected it.  This was an error.  "Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony . . . we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor".  Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983). ALJ McGuan provided no analysis at step 2 concerning the later evidence of autism.

        Nonetheless, I agree with the Commissioner that an error at step 2 of the analysis may be harmless where the ALJ continues to assess the impact of both severe and non-severe impairments upon a claimant's functional abilities.  *See* Commissioner's Brief [17-1], pp. 11-12; *see also* Howard v. Commissioner, 203 F.Supp.3d 282, 297 (W.D.N.Y. 2016).  Here, however, the error at step 2 was not harmless because ALJ McGuan relied on stale medical evidence to assess D.A.C.'s abilities in each of the six functional domains applicable to a child's application for benefits.  Because it is not clear whether ALJ McGuan properly assessed the evidence of

D.A.C.'s functional abilities through the date of his decision, I remand this matter for further proceedings and possible further development of the record.

"Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty to develop the record exists even when the claimant is represented by counsel." Munerlyn v. Colvin, 203 F. Supp. 3d 253, 263-64 (W.D.N.Y. 2016); Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In the case of a minor seeking SSI benefits, the Commissioner's regulations state that "whenever possible and appropriate" the ALJ "will try to get information from people who" can provide information concerning the effects of the claimant's impairments on his or her activities of daily living. 20 C.F.R. §416.924a(a)(2).

The extent of the ALJ's duty to develop the record is a factual inquiry dependent upon the plaintiff's impairments and whether the medical evidence in the record is deficient. *See, e.g.*, Moran, 569 F.3d at 114 ("In light of the meager record and Moran's manifest debilitating condition, it was especially important for the ALJ to help Moran develop a testimonial record of the critical events"); Velez v. Colvin, 2016 WL 8671963, *6 (W.D.N.Y. 2016) (noting that the Second Circuit's holdings in Tankisi v. Commissioner, 521 Fed. Appx. 29 (2d Cir. 2013) and Pellam v. Astrue, 508 Fed. Appx. 87 (2d Cir. 2013) were fact specific and holding that "under these circumstances which included vagueness in the record . . . as well as a claimant with a mental impairment, it was incumbent upon the ALJ to advise the plaintiff of the importance of obtaining functional assessments from her treating physicians").

Where the only functional assessments in the record are stale, the ALJ has an obligation to develop the record with a functional assessment. *See, e.g.* Girolamo v. Colvin,

2014 WL 2207993 (W.D.N.Y. 2014) ("[a] stale medical opinion does not constitute substantial evidence to support an ALJ's findings"); Clute ex rel. McGuire v. Commissioner of Social Security, 2018 WL 6715361, *5 (W.D.N.Y. 2018). "The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence"); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same). "A medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically . . . after the opinion demonstrates substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8.

In assessing the medical and other evidence concerning D.A.C.'s functional abilities, ALJ McGuan gave "great weight" to:

- Dr. Hartley-McAndrew's June 3, 2014 assessment (Administrative Record [10], p. 565);
- Occupational therapist Jean Kersten's June 12, 2013 evaluation (id, p. 566);
- Physical therapist Jill Lombardi's June 14, 2013 evaluation (id.);
- Speech/language pathologist Kimberly Sisti's June 12, 2013 evaluation (id.); and
- State agency pediatrician D. San Jose-Santos, M.D.'s April 2013 opinion (id.).

ALJ McGuan assigned "partial weight" to the April 4, 2013 opinion of consultative examiner Hongbiao Liu, M.D. (id., p. 565); "some weight" to speech-language

pathologist Kristina Vranjes's January 8, 2013[5] narrative opinion and her March 15, 2013 speech and language questionnaire (id., pp. 565-66); "some weight" to the undated questionnaire completed by D.A.C.'s 3rd grade (2018-2019) special education teacher, Mrs. Pomaranski, and his report card for the second marking period of 3rd grade (id., p. 566), and "little weight" to the testimony and reports of D.A.C.'s mother (id., p. 566).

"For SSI applications, the relevant period is between the date of the application and the date of the ALJ's decision". Leisten v. Astrue, 2010 WL 1133246, *1, n. 2 (W.D.N.Y. 2010). Accordingly, the issue here is whether D.A.C. was disabled between December 11, 2012 and December 2, 2019. See Administrative Record [10], p. 567. The medical evidence between Dr. Hartley-McAndrew's June 2014 assessment and 2019 demonstrates that D.A.C.'s conditions changed significantly over time, prompting his doctors to include additional diagnoses in D.A.C.'s records, recording significant behavioral symptoms, and requiring additional treatment, including medications. In August of 2014 and December of 2015, D.A.C.'s primary care physician, Constantina Spiropoulos, M.D. examined D.A.C. for a "4 year well child visit" and a "5 year well visit", respectively. Administrative Record [11], p. 982, 1007. In both treatment notes, she made a note of Dr. Hartley-McAndrew's June 2014 assessment in the treatment note and stated that it found D.A.C. did not meet the criteria for autism and had mild delays.[6] Id., p.

---

[5] Although ALJ McGuan refers to speech pathologist Vranjes's narrative opinion as a "subsequent" opinion (id., p. 566) showing that C.A.D. had made "steady progress toward speech and language goals", the fax legend at the top of her opinion (id., p. 198) demonstrates that it was faxed on January 8, 2013, approximately two months prior to her completion of the March 15, 2013 speech and language questionnaire (id., p. 280-83).

[6] The Commissioner characterizes these comments as a finding by Dr. Spiropoulos that D.A.C. did not have autism and exhibited only mild delays in order to bolster his argument that substantial evidence exists in the record to substantiate the ALJ's conclusion that autism is not a severe impairment. See Commissioner's Brief [17-1], pp. 11-12. As an initial matter, because ALJ McGuan did not incorporate this reasoning into his analysis, it is a *post hoc* rationalization that cannot be credited here. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Further, a review of the actual treatment note demonstrates that Dr. Spiropoulos merely documented that the developmental testing took place, and noted the result of the

984. Dr. Spiropoulos characterized her June 2014 exam as a "routine" child health check and noted that D.A.C. was a "[w]ell developing 4 [year old]". Id., p. 985. She recognized, however, that D.A.C. had "multiple chronic illnesses and sensory issues". Id. Dr. Spiropoulos's subsequent records provide evidence that D.A.C.'s condition deteriorated over time. After her December 21, 2015 examination of D.A.C., Dr. Spiropoulos changed her primary assessment to a "routine child health examination with abnormal findings". Id., pp. 1007-09. In addition, she added to the treatment note a diagnosis of "[d]evelopmental disorder of scholastic skills". Id., p. 110. After her June 27, 2018 examination of D.A.C. for his "7 year well visit", Dr. Spiropoulos diagnosed D.A.C. with "[p]ervasive developmental disorder" and noted that he was being "followed by Children's Neurology". Id., pp. 1028-31. The Commissioner concedes that the diagnosis of "pervasive developmental disorder" is equivalent to a diagnosis of autism. Commissioner's Brief [17-1], p. 12, n. 2.

Other medical evidence likewise suggests significant developments in D.A.C.'s condition over time. Dr. Spiropoulos's records contain a May 16, 2016 note from Dr. Hartley-McAndrew diagnosing D.A.C. with "[p]ossible ADHD", "[t]ics/complex stereotypic movements" and "compulsive behaviors". According to the note, "developmental testing" showed that D.A.C. "has significant repetitive and sensory based compulsive behaviors". Administrative Record [11], p. 1018. Dr. Hartley-McAndrew started D.A.C. on Clonidine, a medication sometimes prescribed to treat behavioral symptoms associated with both ADHD and

---

testing. It is listed under the heading "Health Maintenance" with a listing of other diagnostic tests - such as lead screening, immune status panel, CBCs, and an EEG - along with their results. These comments were not the result of Dr. Spiropoulos's own testing and opinion. See Commissioner's Brief [17-1], pp. 11-12; Administrative Record [11], pp. 984, 1008.

autism.[7]  The results of the May 2016 developmental testing referred to by Dr. Hartley-McAndrew do not appear in the Administrative Record.

Records from the DENT Neurologic Institute further demonstrate significant changes in D.A.C.'s symptoms and diagnoses as D.A.C. aged.  For example, Mohammad Qasaymeh, M.D. stated in his February 4, 2015 treatment note that D.A.C.'s "[l]anguage function is mildly delayed", but noted no other abnormal findings.  Administrative Record [11], pp. 821-22.  D.A.C.'s EEG was normal, but his MRI was abnormal.  Id., p. 822.  He diagnosed D.A.C. with delayed milestones and an abnormal brain MRI.  Id.  He characterized D.A.C.'s delays as "mild" and "progressively improving", with "no history of regression".  Id.  After examination on May 3, 2016, however, Dr. Qasaymeh stated that D.A.C.'s "improvement is not very encouraging" and that D.A.C. "has [a] history of regression".  Id., p. 819.  He recommended re-evaluation at the Robert Warner Clinic "for possible autism" and evaluation for ADHD. Id. Dr. Qasaymeh examined D.A.C. again on October 1, 2018.  He stated that, upon examination, D.A.C.'s "[l]anguage function is delayed for [his] age" and that D.A.C. "was not interacting like a typical 8-year-old".  Id., p. 816.  Although he described many unremarkable examination findings, he again noted the abnormal MRI results and diagnosed D.A.C. with autism in addition to ADHD.  He characterized D.A.C.'s behavior as "hyperactive and impulsive", "fidgety", and "inattentive" and further noted that D.A.C.'s "symptoms are disruptive".  Id.  Physician's Assistant Jessica C. Amborski examined D.A.C. on June 5, 2019.  Id., p. 1316.  Although she noted many normal findings upon examination, she also noted that D.A.C. "is hyperactive" and "does try to eat the table paper".  Id., p. 1318.  Her diagnoses included both ADHD and autism.

---

[7]  See Banas and Sawchuk, "Clonodine as a Treatment of Behavioural Disturbances in Autism Spectrum Disorder: A Systematic Literature Review", Journal of the Canadian Academy of Child and Adolescent Psychiatry, May 1, 2020, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7213918/ (last accessed September 22, 2021).

Id.  She noted that the Focalin prescribed for ADHD symptoms "seemed to lead to improvement" without further elaboration concerning the "improvement", and that D.A.C. "is also on Clonidine for his autism".  She stated that D.A.C. "does have arm flapping which is a form of stereotypies".[8]  Id.

ALJ McGuan did not discuss any of this evidence in his analysis of D.A.C.'s functional abilities.  Although he was free to choose between competing opinions, he must give his reasons for doing so.  He did not do so here, and "we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor".  Fiorello,  725 F.2d at 176.  Further, the more recent evidence does not contain "substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8.  After 2013, the record contained evidence of D.A.C.'s worsening behavioral symptoms, additional diagnoses, and more significant treatment.  To the extent that the post-2013 medical evidence was unclear concerning D.A.C.'s functional abilities, ALJ McGuan had an obligation to develop the record.  See, Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel" (internal quotation omitted)).

Accordingly, I remand this matter for consideration of the relevant evidence concerning autism at step 2 of the analysis, for analysis of post-2014 evidence concerning D.A.C.'s functional abilities through the date of the ALJ's decision, and for further development of the record, if necessary, concerning D.A.C.'s current diagnoses and functional abilities.  Because I am remanding this matter for further administrative proceedings, I do not reach

---

[8]     A "stereotypy" is a "frequent repetition of the same, typically purposeless movement, gesture, posture, or vocal sounds or utterances (as in autism spectrum disorder)".  Merriam-Webster Medical Dictionary, https://www.merriam-webster.com/dictionary/stereotypy#medicalDictionary (last accessed September 23, 2021).

plaintiff's remaining arguments.  See Shaine J. v. Commissioner, 2020 WL 68887622, *5 (W.D.N.Y. 2020).

## CONCLUSION

For these reasons, the plaintiff's motion [14] is granted and this matter is remanded for further proceedings consistent with this opinion.  The Commissioner's cross-motion [17] is denied.

**SO ORDERED**.
Dated: September 28, 2021

                              /s/ Jeremiah J. McCarthy
                              JEREMIAH J. MCCARTHY
                              United States Magistrate Judge